UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GERALD GRIESER,

        Plaintiff,

v.

        Case Number 09-13313-BC
        Honorable Thomas L. Ludington

DESIGN CRAFTSMEN LLC,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR PARTIAL DISMISSAL

On August 21, 2009, Plaintiff Ronald R. Grieser filed a two-count complaint for breach of contract to pay sales commissions under Michigan law, and a violation of the Michigan Sales Representatives Commission Act ("SRCA"), Mich. Comp. Laws § 600.2961, against Defendant Design Craftsman LLC. Now before the Court is Defendant's "motion for partial summary judgment or partial dismissal" [Dkt. # 11], challenging Plaintiff's claim under the Michigan SRCA. Plaintiff filed a response [Dkt. # 14] on January 11, 2010; and Defendant filed a reply [Dkt. # 15] on January 18, 2010. The Court held a hearing on February 10, 2010. For the reasons stated below, Defendant's motion will be denied.

I

Plaintiff, a California resident, alleges in his complaint that he entered into an employment agreement with Design Craftsman, Inc., the predecessor of Defendant Design Craftsman LLC, on or about June 12, 1998. Compl. ¶ 5. At some unidentified point during Plaintiff's employment, all of the assets and liabilities of Design Craftsman, Inc., were transferred to Defendant Design Craftsman LLC, whose principal place of business is in Midland, Michigan. *Id.* ¶ 7. Plaintiff

alleges that Defendant "sells or distributes products in the State of Michigan and/or contracts with sales representative to solicit orders for or sell products in the State of Michigan." *Id.* ¶ 11. Plaintiff was employed as a sales representative "for the solicitation of orders or sale of goods, and was paid, in whole or in part, by commission." *Id.* ¶ 12. Plaintiff alleges that pursuant to the employment agreement, he was to be paid commissions at the rate of three percent on all business that he procured for Design Craftsman, Inc. *Id.* ¶ 8. Finally, Plaintiff alleges that Defendant has intentionally failed to pay sales commissions to Plaintiff "within the time limits prescribed by the Michigan [SRCA]." *Id.* ¶ 13.

Plaintiff attached a copy of the employment agreement to his complaint. In the agreement, his position title is "West Coast Account Manager," and his "responsibilities" are described as follows:

> Prospecting and lead follow-up will initially occupy a large amount of your time and thought process. We will assist you with this process by providing leads that we generate in the western United States. Additionally, you will participate in various trade shows that will help with the task. The entire Midland staff will be available to assist you in preparing credentials packages for new prospects.
>
> We are structuring our sales effort to allow account managers to spend a lot of "face time" with clients; as a result I will expect a reasonable number of sales calls each week. When a lead turns into a proposal your function will be to champion the project through estimating and the creative development process; again the Midland staff will assist in every step of this process.

The agreement further provides for an annual salary of $65,000 and a standard commission rate of three percent "on all business sold at a normal mark-up."

In his brief in response to Defendant's motion, Plaintiff asserts that beginning in approximately August 2003, Defendant failed to properly calculate and pay Plaintiff's commissions. Plaintiff asserts that Defendant failed to pay the agreed upon rate on some sales and entirely failed

to pay commissions on other sales. Plaintiff suggests that Defendant may now be "defunct."

Plaintiff attached an affidavit to his brief in response to Defendant's motion that contains a few additional facts. Pl. Br. Ex. A; Pl. Aff. (Jan. 11, 2010). Plaintiff states that his primary job responsibility was to "call on new and existing customers throughout the United States, including Michigan, in an attempt to procure the sale of exhibits and displays which would be manufactured by Defendant." Pl. Aff. ¶ 7. Plaintiff states that sales "typically included numerous products or goods such as custom-built display cases, stock display cases, structures, scenic elements, artwork, signage, graphics, audio-visual hardware, media, software, artifacts, and props." *Id.* ¶ 8. Plaintiff states that a "substantial portion" of those items were "manufactured or constructed by Defendant at its facility in Midland, Michigan, and then shipped to the customer's location," but "[o]ther products were purchased by Defendant and then incorporated into the exhibits or displays which were sold to the customers." *Id.* ¶ 9. Plaintiff states that he solicited orders from customers in Michigan, including the Henry Ford Museum, the Walter P. Chrysler Museum, the Federal Reserve Bank in Detroit, and the Motown Museum. *Id.* ¶ 10. Plaintiff also states that he "brought potential customers to the Design Craftsmen facility in Midland, Michigan for meetings related to my efforts to procure sales from those clients." *Id.* ¶ 11. Finally, Plaintiff states that he attended numerous meetings at Defendant's facility in Midland throughout his employment. *Id.* ¶ 12.

Finally, Defendant attached to its reply brief a sample of a "subcontract" between Defendant and a customer to illustrate "what Design Craftsmen's customers contracted to receive." The sample agreement provides in part that Defendant "shall provide and furnish all labor, materials, tools, supplies, equipment, services, facilities, supervision, and administration necessary for the proper and complete performance and acceptance of: Furnish and install interpretive exhibit systems for the

project, as specifically defined in the following specifications, together with such other portions of the drawings, specifications, and addenda of the Prime Contract documents. . . ." Def. Reply Br. Ex. 1.

II

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not

"rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

III

In 1992, the Michigan Legislature enacted the SRCA "to ensure that sales representatives are paid the commissions to which they are entitled, especially when those commissions come due after the termination of the employment relationship." *Walters v. Bloomfield Hills Furniture*, 577 N.W.2d 206, 208 (Mich. Ct. App. 1998). The statute primarily aids sales representatives by allowing for the recovery of "actual damages," § 2961(5)(a), "2 times the commissions due but not paid . . . or $100,000.00, whichever is less," § 2961(5)(b), and "prevailing party reasonable attorney fees and court costs," § 2961(6). While there has been a significant amount of litigation requiring interpretation of the statute, there remain important unresolved issues.

Of central importance to Defendant's motion for partial summary judgment or partial

dismissal are two definitions contained within the Michigan SRCA – the definitions of "principal" and "sales representative." A "principal" is a person[1] that either "[m]anufactures, produces, imports, sells, or distributes a product in this state," § 2961(1)(d)(i), or "[c]ontracts with a sales representative to solicit orders for or sell a product in this state," § 2961(1)(d)(ii). A "sales representative" is "a person who contracts with or is employed by a principal for the solicitation of orders or sale of goods and is paid, in whole or in part, by commission. . . ." § 2961(1)(e).

Defendant advances two main arguments in its motion. First, Defendant contends that Plaintiff's employment activities are not within the geographic scope of the statute. Second, Defendant contends that the statute is not applicable to this case because Defendant is not a "principal" and Plaintiff is not a "sales representative" within the meaning of the statute.

A

Defendant first argues that Plaintiff does not fall within the protection of the Michigan SRCA because he did not allege that he was involved in the sale of any product or good in Michigan or that he procured any orders for such in Michigan. Defendant advances *Howting-Robinson Associates, Inc. v. Bryan Custom Plastics*, 65 F. Supp. 2d 610 (E.D. Mich. 1999), and *Kenneth Henes Special Projects Procurement v. Continental Biomass Industries, Inc.*, 86 F. Supp. 2d 721 (E.D. Mich. 2000), aff'd, 68 F. App'x 630 (6th Cir. June. 26, 2003), for the proposition that the Michigan SRCA applies only to Michigan sales representatives, that is, sales representatives who sell products in Michigan.

In *Howting-Robinson*, the court addressed whether an Ohio choice of law provision in the parties' contract was effective to require application of Ohio law, such that the Michigan SRCA did

---

[1] A person is defined as "an individual, corporation, partnership, association, governmental entity, or any other legal entity." § 2961(b).

not apply. 65 F. Supp. 2d 610. The court found that the choice of law provision was not effective because Ohio did not meet the "substantial relationship" test, and because Ohio law is contrary to a "fundamental policy" of Michigan. *Id.* at 613. With respect to a "fundamental policy," the court found it significant that in contrast to Ohio law, "[t]he text of the MSRA indicates that the Michigan Legislature, in enacting a heavy penalty against violating principals, intended to ensure that sales representatives in Michigan are paid the full commissions to which they are entitled, especially when those commissions fall due after the termination of the employment relationship." *Id.* (citing *Walters*, 577 N.W.2d 206).[2] The court further stated that "[t]he Michigan Legislature intended for its citizens to receive greater protections in the collection of their sales commissions. . . ." *Id.*

In *Kenneth Henes*, the court first determined that the defendant had waived any argument that the Michigan SRCA applied only to commissions arising from sales that took place in Michigan. 86 F. Supp. 2d at 725-27. The Sixth Circuit affirmed based on waiver. *Kenneth Henes*, 68 F. App'x at 631. Assuming arguendo that the issue had not been waived, the district court, but not the Sixth Circuit, rejected the defendant's substantive argument. *Kenneth Henes*, 86 F. Supp. 2d at 728. Noting a lack of relevant case law, the court relied primarily on the text of the statute, which it described as "one of the most haphazardly and inartfully drafted pieces of legislation that it has ever been called upon to review." *Id.* at 728-29.

The court noted that the first definition of a "principal" as a person who "[m]anufactures, produces, imports, sells or distributes a product in this state," § 2961(1)(d)(i), is clearly focused on "where a product is sold (or manufactured, or distributed)." *Id.* at 729-30. In contrast, the second

---

[2] Although the question is not significant as to the case now before the Court, whether Ohio law differs significantly is questionable. *See* Ohio Rev. Code § 1335.11.

definition of a principal as a person who "[c]ontracts with a sales representative to solicit orders for or sell a product in this state," § 2961(1)(d)(ii), is ambiguous. *Id.* at 729. The court emphasized that it could "envision several plausible constructions of subsection (ii) due to the string of four prepositional phrases and the obviously inartful placement of the last prepositional phrase 'in this state.'" *Id.*

First, the court explained that subsection (ii) could "apply to a principal who *enters into a contract in Michigan* with a sales representative who may or may not be based in Michigan." *Id.* (emphasis in original). The court noted that the phrase "in this state" could also "describ[e] the situs of the sales representative with whom the principal has contracted," thereby applying "to sales representatives who have their businesses based in Michigan, regardless of the place of contracting." *Id.* Third, the court explained that the phrase "in this state" could refer to the product sold, thereby making the statute applicable "if orders were solicited in Michigan or the product was sold in Michigan." *Id.*

The court then looked to the Senate Legislative Analysis for guidance "[g]iven that there is no stated scope of coverage of the Act within the statute – nor any statement of intent or applicability – and no recorded official legislative history. . . ." *Id.* The court highlighted that the legislative analysis noted that "sales representatives' problems in being promptly paid the commissions owed to them were prevalent 'regardless of geographic territory or type of product sold.'" *Id.* This suggested that:

> [T]he applicability of the statute was not intended to be limited by the place where the sales representative solicits the order or sells a product. Rather, the Legislature's intent appears have been to assist Michigan sales representatives in recovering commissions they have earned, regardless of where they solicited the orders or sold the product.

*Id.* The court concluded that "[t]he focus of subsection (ii) is not on the act of selling a product in

-8-

Michigan, but rather appears to be on the act of contracting with a sales representative in Michigan." *Id.* at 730. The court reasoned that to construe "the phrase 'in the state' in both parts (i) and (ii) of subsection 2961(1)(d) as calling for application of the statute only when a sale occurs in Michigan would render subsection (ii) duplicative of subsection (i)." *Id.*

In response, Plaintiff emphasizes that neither *Howting-Robinson* nor *Kenneth Henes* addressed the question of whether the Michigan SRCA applies only to sales representatives who sell products in Michigan. Rather, in each case, a sales representative that resided in Michigan sued an out-of-state principal seeking to recover penalty damages under the Michigan SRCA. Plaintiff emphasizes that *Howting-Robinson* did not address the issues of whether the plaintiff was a "sales representative" or defendant was a "principal" as defined by the statute, or whether the statute applied to out-of-state sales representatives. While the court indicated that the Michigan Legislature "intended to ensure that sales representatives in Michigan are paid the full commissions to which they are entitled," 65 F. Supp. 2d at 613, the court gave no indication as to whether the statute would apply equally to out-of-state sales representatives. Similarly, in *Kenneth Henes*, the court concluded that the SRCA applied to an out-of-state principal who contracted with an in-state sales representative even when the sales occurred outside of Michigan, 86 F. Supp. 2d at 728-29, but did not discuss whether the statute would apply to out-of-state sales representatives.

Plaintiff argues that the plain text of the statute makes it clear that the Michigan Legislature intended for the statute to apply to any principals who conduct business in Michigan, regardless of where sales representatives are located, or where the sales took place. *See Walters*, 577 N.W.2d at 208 (quoting Senate Legislative Analysis, SB 717, Apr. 30, 1992):

> Regardless of geographic territory or type of product sold, after the business relationship between a wholesale sales representative and a principal (e.g., a manufacturer or distributor)

> has been terminated, many sales representatives reportedly experience difficulty in recovering commissions they have earned. . . . Apparently, to recover a commission, a sales representative often must sue in the domicile of the principal, and bear the added costs of attending depositions and trial in another state.

Plaintiff suggests that it is principals, not sales representatives, that must have connections with Michigan in order to trigger the SRCA. *See Stonemen Group, Inc. v. Metalforming Techs., Inc.*, 362 F. Supp. 2d 896, (E.D. Mich. 2005) ("The definition of principal identifies the persons who are subject to the Act. . . .").

In *Stonemen*, the court adopted the reasoning of a Michigan court of appeals, explaining that "by virtue of the fact that the statute references *all* commissions, the statute requires that *all commissions, no matter where earned*, be paid to a sales representative by a principal." *Id.* at 899 (quoting *Cherry v. Am. Technical Servs.*, No. 213888, 217620, 2000 WL 33403005, at *3-4 (Mich. Ct. App. Nov. 3, 2000)) (emphasis in quotation). "After a person is determined to be a principal within the meaning of the statute, then all commissions earned by a sales representative may be recovered under the statute." *Id.* (quoting *Cherry*, 2000 WL 3343005, at *4).

Defendant comes within the statute's definition of principal, Plaintiff explains, because it manufactured and produced displays and exhibits in Michigan and contracted with sales representatives to solicit orders in Michigan. Thus, Plaintiff argues that he is a "sales representative" within the meaning of the statute because he contracted with a "principal" and was paid in part by commission. Based on the above, Defendant's argument that Plaintiff's employment activities are not within the geographic scope of the statute is not persuasive. As Plaintiff emphasizes, Defendant contracted with Plaintiff in Michigan, and Defendant's manufacturing and production activities are based in Michigan. These facts are sufficient to establish the necessary geographic connection under § 2961(1)(d).

B

Defendant next argues that it is not a "principal" under the Michigan SRCA because it is "not in the business of selling goods," and its "only business is providing a service– the service of exhibit production." Defendant represents that "they (sic) plan, design, project manage, engineer, manufacture and install exhibits for museums, attractions, visitor centers, sports venues, and corporations." Defendant emphasizes that "[n]o individual can walk into Design Craftsmen and leave with goods," though it is not exactly clear what that means. Similarly, Defendant contends that Plaintiff is not a "sales representative" under the Michigan SRCA because "he was not employed by Design Craftsmen to solicit orders or sell goods." Defendant contends that Plaintiff was employed "to sell Design Craftsmen's services as a full-service exhibit producer." (emphasis in Def. Br.).

Defendant relies on three cases to illustrate what it discerns as the distinction between "goods" and "products" to which the statute applies, and "services" to which the statute does not apply. First, in *Mahnick v. Bell Co.*, 662 N.W.2d 830, 835 (Mich. Ct. App. 2003), the court concluded that "[s]ervices do not constitute goods or products within the meaning of the SRCA." The court noted that the terms "goods" and "products" were not defined by the statute, and looked to dictionary definitions of those words. *Id.* at 834-35.

The court noted that "[t]he word 'product' is defined as 'a thing produced by labor,' 'the totality of goods or services that a company produces,' and 'material created or produced and viewed in terms of potential sales.' " *Id.* at 834 (quoting Random House Webster's College Dictionary (2001), p. 1055) [hereinafter "Webster's"]. The court noted that the term "goods" is defined as " 'possessions, esp[ecially] movable effects or personal property' and as 'articles of trade;

-11-

merchandise.' " *Id.* (quoting Webster's, p. 565). In contrast, the court noted that the word "services" is defined as " 'the performance of any duties or work for another,' 'supplying services rather than products or goods.' " *Id.* at 835 n.3 (quoting Webster's, p. 1202).

Applying those definitions to the specific facts of the case before it, the court found that "defendant, as a general contractor, was not engaged in the manufacture, production, importation, sale, or distribution of products. Rather, as a general contractor, defendant provides professional construction services to the project owner." *Id.* at 834-35. Additionally, the court found that "[a]s a project estimator, plaintiff assisted defendant's efforts to bid to provide services to the project owner by providing a professional service to defendant." *Id.* at 835; *id.* at 831 ("As a project estimator, plaintiff would estimate the cost of completing a construction project . . . [and the estimate] would serve as the basis of a bid submitted by defendant on competitively bid construction projects."). Thus, the court concluded that the Michigan SRCA was not applicable to the plaintiff's claims.

Second, Defendant relies on *Frommert v. Bobson Construction Co.*, 558 N.W.2d 239, 240 (Mich. Ct. App. 1996), in which the court addressed whether the contract at issue was for services or goods for purposes of determining whether the transaction was governed by the Uniform Commercial Code. The court explained that "to determine whether contracts for mixed goods and services are governed by the UCC[,] . . . '[t]he test for inclusion or exclusion is . . . whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved . . . or is a transaction of sale, with labor incidentally involved.' " *Id.* (quoting *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 618 (Mich. 1992), and citing *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974)).

Ultimately, the court found that the contract to remove a leaky roof and replace it with a new roof meeting certain specifications was a contract for services rather than goods because "it is difficult to conceive of the goods being supplied, the roofing material, as the predominant purpose of the contract." *Id.* In other words, "plaintiff needed to have a new roof installed, and the service of removing the old roof and replacing it with the new roofing system was clearly the predominant purpose of the contract." *Id.* The court further explained that "[t]he goods were merely incidental to the purpose of the contract . . . because the goods would have been of no value unless they were installed." *Id.* at 241. The court noted that there are case decisions "where installation contracts were not covered by Article 2 of the UCC." *Id.* Finally, the court noted that the opposite result had been reached in at least two cases where the defendant "was sued in its capacity as the manufacturer of the roofing material . . . , the contract was very specific in identifying the type of roof to be installed and the roof was not installed by the defendant." *Id.*

Third and finally, Defendant relies on *Schocker v. Guardian Alarm Co. of Mich.*, No. 07-15059, 2008 WL 3200623, at *15 (E.D. Mich. 2008), in which the court determined that the Michigan SRCA was not applicable when the plaintiff "had an employment contract for 'the solicitation' and 'sale' of a limited amount of equipment, as well as the solicitation and sale of home alarm services. . . ." The court explained that "[t]he implication derived from *Mahnick* is that the relevant question under the MSRCA is what type of work 'predominates.' " *Id.* at *16. In other words, "[t]he inquiry that appears relevant to the Court is whether a customer could engage with Guardian (including its commissioned employees), as a supplier of 'goods' without also doing so as a provider of 'service.' " *Id.* The court noted that "the end result of the provision of [the defendant's] 'service' does not arguably result in a 'good,' " and concluded that "it is undeniable

that the sale of the equipment is incidental to the service in which Guardian primarily specializes." *Id.* Thus, the court concluded that the plaintiff had predominately sold the defendant's "services," rather than "goods," and therefore the Michigan SRCA did not apply.

In response, Plaintiff contends that the museum displays manufactured by Defendant come within the meaning of "product" or "good" as those terms are used in the SRCA. Plaintiff highlights the following definition of "product" from Black's Law Dictionary (8th ed. 2004): "Something that is distributed commercially for use or consumption and that is usu. (1) tangible personal property, (2) the result of fabrication or processing, and (3) an item that has passed through a chain of commercial distribution before ultimate use or consumption." Plaintiff contends that the museum exhibits and displays manufactured by Defendant meet this definition of product because they are built by Defendant in Midland, distributed for commercial use, consist of tangible personal property, are the result of fabrication or processing, and are passed through a chain of commercial distribution before ultimate use.

Plaintiff also highlights the following definition of "goods" from Black's Law Dictionary (8th ed. 2004):

> 1. Tangible or movable personal property other than money; esp., articles of trade or items of merchandise <goods and services>. • The sale of goods is governed by Article 2 of the UCC. . . . 2. Things that have value, whether tangible or not <the importance of social goods varies from society to society>.
> " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107)." UCC § 2-105(1).

Again, Plaintiff emphasizes that Defendant's displays and exhibits consist of moveable personal property that is specially manufactured by Defendant for the client. Plaintiff asserts that the larger

-14-

displays may not be easily movable, but are clearly tangible and movable with the proper effort.

Plaintiff also argues that *Mahnick* is distinguishable because in this case, Plaintiff was paid "commissions" rather than a "bonus," and the plaintiff in *Mahnick* was a "project estimator" who did not sell any goods or products, nor was it apparent that the defendant sold any goods or products. Plaintiff contends that the customers in this case sought to purchase a finished product, i.e., an exhibit or display, rather than the service of project management. Further, under *Frommert*, Plaintiff contends that Plaintiff's sales were "transactions of sales, with labor incidentally involved" because the customers were interested in purchasing the finished product, an exhibit or display, made up of various products assembled or manufactured by Defendant.

Ultimately, Plaintiff contends that Defendant falls within the definition of the Michigan SRCA's definition of "principal" because Defendant manufactures, produces, and sells its exhibits and displays in Michigan; and Plaintiff contends that Defendant contracted with Plaintiff, a "sales representative," to solicit orders for or sell goods in Michigan.

In reply, Defendant relies on a sample subcontract attached to its reply brief to contend that a customer does not contract for a "finished product" as Plaintiff suggests, but for Defendant to "plan, design, project manage, engineer, manufacture and install the display or exhibit sought by the customer." Defendant emphasizes that Plaintiff did not attempt to distinguish *Schocker*, and emphasizes that a customer in this case could not purchase an exhibit or display without also contracting for Defendant to plan, design, project manage, engineer, manufacture, and install the exhibit or display. Defendant also emphasizes *Frommert*'s language that "the goods would have been of no value unless they were installed." Defendant contends that the "essential" or "predominating" character of the job was services.

-15-

Each party, in summary, identifies general aspects of Defendant's relationship with its customers and parallel legal authority that emphasize the relative importance of Defendant's services in constructing one of a kind exhibits on the one hand and the fact that exhibits are goods on the other hand. However, beyond anecdotal observations offered by counsel about Defendant's business and its customer relationships, there was no citation to deposition testimony, financial statements, customer affidavits, or related materials. While interpretation of the statute is a task assigned to the Court, the question of whether a statute applies in a particular case generally involves questions of fact. *See, e.g.*, *Monroe Auto Equipment Co. v. Heckethorn Mfg. & Supply Co.*, 332 F.2d 406, 410-11 (6th Cir. 1964). While it is important to recall that it is Plaintiff who must not only plead, but also prove the application of the statute to demonstrate a jury question, it is equally important to emphasize that in advancing a Rule 56 motion, Defendant must identify the portions of the record that demonstrate that it is entitled to judgment as a matter of law. *See Mt. Lebanon Personal Care Home*, 276 F.3d at 848.

As of this point in time, Defendant has not provided sufficient information about Defendant and its customer relationships to conclude that the Michigan SRCA does not apply as a matter of law. It remains unclear, for example, whether there is or was a "typical" customer relationship, or if the relationship varied based upon the particular customer engagement. Were there any "off the shelf" products sold at all or did Defendant exclusively market its unique engineering and design services? And, what type of specialized services did it offer and how were they managed to produce either a fungible product or a uniquely identifiable product? What was the resale value of the exhibit as a "product" in relationship to the price Defendant's customers were willing to pay? While Defendant's argument is compelling, too little information is advanced by Defendant at this juncture

to conclude that Plaintiff cannot develop any set of facts that would qualify him for protection under the Michigan SRCA.

Accordingly, it is **ORDERED** that Defendant's motion for partial summary judgment or partial dismissal [Dkt. # 11] is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: March 2, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 2, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---